[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Doreen Shalkowski, commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown, returnable to this court April 13, 1993. In her complaint, she also seeks, inter alia, alimony, and equitable division of real and personal property, and restoration of her birth name. The defendant husband admitted in his answer that the marriage has broken down irretrievably, and in his cross complaint sought a dissolution of the marriage on that ground. He also seeks alimony and an equitable division of the real and personal property. The parties were represented by counsel throughout the proceedings. Both parties testified at trial, filed financial affidavits and presented documentary evidence, from which the court finds the following facts.
The wife, whose maiden name was Doreen Gonella, and whose prior married name was Rusch, married the husband on July 16, 1988, at North Stonington, Connecticut. She has resided continuously in this state for at least one year before the filing of the complaint. All statutory stays have expired, CT Page 11259 and the court has jurisdiction.
There were no minor children issue of this marriage, and none were born to the wife since the date of the marriage. The wife has two daughters from her prior marriage, one of whom is 17 and who lives with her. The husband has two children from his prior marriage who have reached their majority, one on March 9, 1992; the other, on July 14, 1993. The husband now lives with his mother. Each older child of the parties attends college.
The wife is 43 years of age, a high school graduate, and in good physical health. She suffers from stress and anxiety. The husband is 45 years of age, a high school graduate with two years of college, and is in good health. This is the second marriage for each.
The wife now works for her ex-husband's company as a secretary-bookkeeper and earns $400 per week gross, and $336.63 net with no fringe benefits.
In the recent past, she has held jobs in law firms as a paralegal assistant doing real estate work. In those jobs, she earned salaries comparable to her present income, but also enjoyed fringe benefits. She left her last paralegal job with a sole practitioner as a result of the stress created by the family's straitened financial situation and deteriorating marriage and the demands of that job.
The husband has spent ten years in the retail automobile sales business as a new and used car salesman, and has worked as a car salesman in a local car dealership for the past year. According to his financial affidavit, he currently earns $362.29 per week gross and $255.83 per week net, after deduction for state and federal income taxes, social security and medical insurance. However, Plaintiff's Exhibit 1, his subpoenaed wage records indicates that he earned the sum of $19,734.71 during 1993 through December 5, 1993, a 48-week period, which would give him a gross income of about $411 per week and is at variance with his affidavit.
This marriage of more than five years' duration was punctuated by several separations and was dysfunctional before its beginning. The parties lived together for about one year before their marriage in a home wholly owned by the wife, which CT Page 11260 she purchased for the sum of $80,000 from funds derived from her first marriage. At the time of the parties' marriage, the husband had no significant debts, had about $5,000 in the bank and a small pension benefit worth about $900. The wife's home, 28 Pond Drive, North Stonington, Connecticut, was debt free when she purchased it. However, in May 1987, she mortgaged it for $18,000, which she used for some renovations and the purchase of a 1987 Ford Taurus automobile which she still owns. Then, later in 1987, the parties purchased a 1988 Bayliner boat for $32,391 with a $4,000 down payment and a note signed by both for about $28,000; the boat loan was later refinanced solely in the husband's name, and ultimately the loan balance of $27,754.34 was paid in full from the proceeds of the sale of the wife's Pond Road property which was sold for $120,000. Also paid from the sale proceeds were various bills, including one of the husband's of $2,442, and the wife's of about $1,800. An additional $60,155 was used to pay off a bridge loan mortgage used to purchase the home presently occupied by the wife at 35 Ravenwood Road, North Stonington, Connecticut, for the sum of $175,000 because the parties desired a larger home. In effect, they used $60,000 from the Pond Road home and an $118,000 first mortgage on the new home to finance its purchase.
In March, 1991, the parties placed a second mortgage of $12,000 at 13.0 percent interest per annum on the Ravenwood Road home and used the funds for a number of purposes including the pay off of a $3,000 loan from husband's mother (borrowed to make mortgage payments); "his and her" credit card bills totalling $3,600; an overdraft of $1,000; past due child support of $1,785 to husband's first wife; and miscellaneous bills and purchases such as a $1,000 riding lawnmower.
The parties took title to the new home jointly, and the husband later quit claimed his interest in it to the wife and she now holds record title to the premises in her name alone.
The parties' lifestyle and spending habits continued apace, and their debts mounted, and severely stressed their relationship. At the same time, they could not rationally discuss their problems without angry disputes. The financial situation was exacerbated by several job changes of each party. However, one of husband's job changes, to Treelawn, which was anticipated to provide him with a regular income and help the parties overcome their financial problems, resulted in his CT Page 11261 layoff after only five months, and his protracted period of unemployment for about a year and one-half. During most of this time, he collected unemployment compensation. He purchased lawn equipment with which to do odd jobs; but, the parties' financial circumstances continued to worsen.
At one time, they agreed to divide certain bills and the husband agreed to be responsible for the first and second mortgage payments. He made these for a while out of income and then used his Visa credit card to do so. When he ran in arrears and the wife received a foreclosure notice, this action ensued.
The parties each testified they loved the other. This was belied by their other actions and omissions to act. The wife testified that the marriage had broken down irretrievably. The husband did not agree, but conceded that it had broken down "financially". The husband, however, admitted in his answer and affirmatively alleged in his counterclaim that their marriage had broken down irretrievably. He also conceded that neither ever suggested counseling of any kind, that they were unable to talk with each other about their problems and that there was a lot of stress and tension. It is clear from this evidence that the marriage has indeed broken down irretrievably and that there is no reasonable likelihood of reconciliation.
The court also finds that the chief cause of the breakdown was the parties' spending habits to which both substantially contributed to and enabled, and therefore, it would serve no purpose, on this evidence, to attempt to assign one or the other a larger share of the responsibility for the breakdown.
The court also finds that both parties' financial affidavits were inaccurate in several respects. The husband understated his gross income by about $50 per week, showed $100 per week in rental payments not actually incurred, and lists $75 per week child support, which is not a current order of support.[1] The wife is entitled to receive $200 per month child support for her daughter, yet chose to show amounts received from her ex-husband as a loan of $10,200. She also overstated the mortgage balances on her house. These misstatements by both parties cast grave doubt upon their testimony relating to husband's arrearage and the wife's debt to her ex-husband.
In any event, the unhappy fact of the matter is that CT Page 11262 the assets acquired during their marriage of any significance consist only of two: the Ravenwood house, now worth $140,000,[2]
with an equity of about $15,000 (first mortgage balance $116,000, second mortgage balance, $9,000), and the 1988 Bayliner boat, now worth $6,500,[3] which means that the parties suffered a loss on the boat of about $26,000. Most of that loss was borne by the wife, and is incorporated into the present debt on the house.
Against these assets, the husband lists $23,292 in liabilities on his affidavit, including $8,000 to his mother and $7,200 in child support.[4] The wife shows $21,717 in liabilities, including $10,200 to her ex-husband for whom she now works and who paid for her trip to Florida. The court does not credit her testimony as to the validity of this debt and whether it will be repaid.
The court finds that the husband has significant earning capacity and potential, and enjoyed the benefit of the parties' lifestyle and spending habits, to which both contributed, as stated. He also is now furnished with free use of an automobile by his employer and only pays for gas. Otherwise, he has very modest expenses and is relieved from any current child support payments as both of his sons have reached their majority.
At the same time, the wife's monetary contributions to their spending and lifestyle were much greater than that of the husband, and he, in fairness, should bear some of the loss occasioned thereby, and assist her to meet her liabilities, and perhaps to hold on to her house. He must do this from his future income, as he has no assets presently. It is also significant to note that while the husband, by agreement pendente lite, was ordered to pay the wife the sum of $150 per week non-taxable alimony pendente lite and fully complied with that order, she has made no significant effort to pare her expenses. She maintains a second car for her teenage daughter which must include substantial additional automobile insurance expense, hires a cleaning service for $50 per week, maintains five pets, and refuses to sell the boat, among other things.
The court, having considered all of the evidence, in the light of the above findings and the factors contained in General Statutes 46b-62, 46b-81 and 46b-82, orders as follows: CT Page 11263
A decree dissolving the marriage may enter on the ground of irretrievable breakdown. The defendant husband is ordered to pay the plaintiff wife the sum of $9,000 lump sum alimony, payable by 120 weekly payments of $75 per week until paid in full, to be secured by an immediate wage execution. The payments shall commence one week from the date hereof.
Title to the 1988 Bayliner boat shall vest in the wife, free of any claims of the husband.
Each shall be responsible for the debts shown on section 3 of their respective financial affidavits and save the other harmless therefrom.[5] The wife shall save the husband harmless from the mortgages on the Ravenwood Road property.
The husband shall irrevocably designate the wife as beneficiary to the extent of $25,000 on his New England life insurance policy and maintain said policy in full force and effect without impairment thereof until he has fully satisfied the alimony obligation above stated. He shall also execute and deliver an authorization directed to said company so that the wife may deal with it directly to determine the good standing of said policy, and such other information as she may reasonably require. In the event the wife desires to continue coverage for herself and her daughters under husband's job-related health and medical insurance pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) and/or General Statutes38a-538, at her sole expense, the husband shall cooperate to effect such continued coverage.
No periodic alimony shall be awarded to either party, and each shall pay his or her own counsel fees, as the court cannot find that a denial of counsel fees to the wife would impair or undermine the other financial orders herein.
The wife shall continue to own, free of any claims of the husband, the premises at 35 Ravenwood Road, North Stonington, Connecticut all of the furniture, furnishings and personal property therein, her motor vehicle, and the personal property shown on her financial affidavit, both tangible and intangible, with the exception of the items listed below, which she shall turn over to the husband within thirty days hereof:
(1) 25" remote RCA color TV and remote control CT Page 11264
(2) His brother's record albums
(3) His high school yearbook
(4) His 25th reunion cup
 (5) His clothing and personal effects from the top bureau drawer
(6) Pictures of his children
(7) His fishing poles, rods and reels
 (8) His personal effects such as photographs, mail and books
(9) One lawnmower
(10) One weed trimmer
(11) One back pack sprayer
(12) The SHP giant vacuum blower
The husband shall also own and have all of the personal property now in his possession.
The wife's birth name of Gonella shall be restored.
Teller, J.